## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

FREESTATE JUSTICE, INC.            *
2601 N. Howard St.                  *
Suite 120                          *
Baltimore, MD 21218,            *
                                 *
             Plaintiff,      *
                                 *
v.                               *     Case No. _____
                               *
JEREMY LAMASTER           *
100 W. University Parkway     *
Apartment 7E                *
Baltimore, MD 21210,          *
                               *
            Defendants.    *
_____/

## VERIFIED COMPLAINT AND REQUEST FOR
## TEMPORARY, PRELIMINARY, AND PERMANENT INJUNCTIVE RELIEF

Plaintiff, FreeState Justice, Inc. (referred to as "Plaintiff" or "FreeState") states as follows by way of complaint against Jeremy LaMaster ("LaMaster" or "Defendant"):

### INTRODUCTION

Jeremy LaMaster[1] is the Former Executive Director for FreeState.  FreeState is a non-profit organization that provides legal services, legal advocacy, education, and outreach for lesbian, gay, bisexual, transgender, and queer ("LGBTQ") Marylanders and their families.  After they were notified on September 16, 2022 that they were relieved of their duties, and the final two weeks of their employment were to be spent cooperating in the transition of FreeState's operations, LaMaster abruptly left the meeting early and immediately began a coordinated attack on FreeState's operations; in particular, its IT assets.  When FreeState discovered LaMaster's

---

[1] LaMaster uses he/they pronouns.

improper interference, it terminated their employment effective immediately, ordered them to cease and desist and to rectify their actions. LaMaster did not abide and continued to hijack and misappropriate FreeState's IT infrastructure and documents.

LaMaster unilaterally and without authorization changed user permissions and shared login information so only they had access to numerous systems and accounts. They also removed employees' administrative access to numerous systems and accounts, leaving such access to only themself. In doing so, LaMaster has left FreeState's employees with little to no access to client files, case files, dashboard reports, and case notes. LaMaster also changed the password to FreeState's Wordpress account, leaving LaMaster in sole control of FreeState's website. Moreover, LaMaster has commandeered the current Executive Director Phillip Westry's Google account, rendering him unable to access his emails, internal work calendars, and collaborative documents shared and worked on via Google Drive. LaMaster also now has unfettered and improper access to employee lists, donor lists, volunteer lists, mailing lists, client lists, and pro bono attorney lists.

In addition, LaMaster's conduct is impeding the ability of FreeState to provide critical legal services to Maryland's LGBTQ community. The Executive Director, who also provides direct legal services, continues to have no email access, and many staff attorneys and the legal staff still does not have access to case materials and tools. This conduct is continuing. As of this afternoon, the legal staff can no longer access the intake@freestate-justice.org email address. This email address is used for scheduling client intakes and receiving client documents.

Despite FreeState's insistence that they cease their unlawful activities and restore operations immediately, LaMaster proceeded to upload a defamatory post to FreeState's website and disseminated it to approximately 43,000 recipients on FreeState's mailing list, which they

accessed without authorization.  The post, titled, "Whistleblowing: Public Call for the Resignation of the FreeState Board of Directors" falsely depicts the circumstances surrounding their departure from FreeState by stating that they resigned, without basis alleged that the Board engaged in ethical violations, and likened FreeState's Board to White Supremacists, claiming they supported white supremacist culture and practices, and were not "anti-racist."  This is false, defamatory, and denigrating of FreeState and its board members, and extraordinarily damaging for a social justice organization.

Because LaMaster did not comply with FreeState's cease and desist letter, because LaMaster continues to infiltrate FreeState's systems and accounts, and because LaMaster, after receiving FreeState's cease and desist letter published a post defaming FreeState, and without authorization, posted it to FreeState's website, and disseminated it to its mailing list of approximately 43,000 people with his FreeState email address, FreeState has no choice but to seek judicial intervention to prevent further unlawful conduct, and irreparable harm to FreeState.

FreeState requests an immediate hearing on this matter.  It can be reasonably presumed that LaMaster will continue to use FreeState's proprietary information to interfere with FreeState's business relations and continue to interfere with FreeState's possessory interests in its systems and accounts, depriving FreeState personnel of access to the accounts, documents, and files they need to perform their work.  An injunction should issue to prevent Defendants from engaging in this improper behavior.

## PARTIES AND JURISDICTION

1.      FreeState is a corporation under the laws of Maryland with its principal place of business at 2601 N. Howard St., Suite 120, Baltimore, MD 21218.

2.      Defendant LaMaster is FreeState's former Executive Director who is domiciled in Maryland and maintains a residence at 100 W. University Parkway, Apartment 7E, Baltimore, MD 21210.

3.      The Court has subject matter jurisdiction over FreeState's claim under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836, and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5)(A), pursuant to 28 U.S.C. § 1331.   The Court has supplemental jurisdiction over FreeState's remaining claims pursuant to 28 U.S.C. § 1367.

4.      The Court has personal jurisdiction over LaMaster because they are domiciled in Maryland.

5.      Venue is proper under 28 U.S.C. § 1391(b).

## FACTS RELATING TO ALL COUNTS

6.      Plaintiff FreeState is a non-profit organization that provides legal services, legal advocacy, education, and outreach for lesbian, gay, bisexual, transgender, and queer ("LGBTQ") Marylanders and their families.

7.      FreeState has a dedicated staff of nine (9) full time employees, which includes three (3) staff attorneys.

8.      In addition to its staff attorneys, FreeState relies on pro bono attorneys to provide legal services to its clients. FreeState has developed and maintained successful relationships with its pro bono attorneys.

9.      FreeState also relies on individual, foundation, and corporate donors, as well as government grants, to fund its operations.

10.     Donors, grantors, clients, pro bono attorneys, and volunteers have numerous choices when it comes to legal advocacy organizations to support.

11.     FreeState has spent significant time and resources cultivating relationships with its volunteers, donors, grantors, email lists and pro bono attorneys.  FreeState has similarly spent significant time and resources cultivating its legislative and fund-raising strategies.

12.     If these business methods, strategies, and information were to fall into the hands of a competing organization, the organization would gain a significant advantage and could allow the organization to bypass the significant hard work and expense that it has taken FreeState to achieve its position in the market. If a competing organization obtained such information, they would instantly have at their disposal the entire infrastructure upon which FreeState relies.

13.     Commencing on June 15, 2020, FreeState employed LaMaster as its Executive Director.

14.     As Executive Director, LaMaster was expected to provide corporate leadership and direct FreeState's Operations.

15.     As Executive Director, LaMaster had access to the Company's most confidential, proprietary and trade secret information.

16.     LaMaster was integrally involved with the cultivation and maintenance of the relationships and strategies referenced in the preceding paragraphs while employed by FreeState.

17.     In addition to LaMaster's common law and fiduciary duties to keep such information confidential and to act in the best interests of FreeState, FreeState's Employee Manual contains a Statement of Confidentiality, which states:

> a. All employees, both full and part-time, including interns, contractors, and temporary employees are required to sign a statement of confidentiality. Additionally, all significant volunteers, including Board and committee members

are required to sign a statement of confidentiality. These will be maintained within personnel files for employees.

18.     The Statement of Confidentiality reads, in part:

I agree to keep confidential any non-published information about any program, employee, volunteer, vendor, office, financial account, or Board member (collectively "FreeState Operations") unless the disclosure is authorized by the Managing Attorney or Executive Director in writing.

I agree not to copy or transport any records relating to any client, participant, or FreeState Operations outside of the FreeState offices unless expressly authorized by the Managing  Attorney or Executive Director in writing.
***

At the conclusion of my employment, whether paid or not, any information will continue to be maintained in confidence by me.

Exhibit 1.

19.     LaMaster received and signed this statement.  Exhibit 1.

20.     FreeState's Internet Usage policy states, in part, that the following behaviors are prohibited and can result in disciplinary action

     a.  Using the organization's time and resources for personal gain;

     b.  Stealing, using, or disclosing someone else's code or password without authorization;

     c.  Copying, pirating, or downloading software and electronic files without permission;

     d.  Sending or posting confidential material, trade secrets, or proprietary information outside of the organization;

     e.  Sending or posting messages or material that could damage the organization's image or reputation;

     f.   Sending or posting messages that defame or slander other individuals;

     g.   Attempting to break into the computer system of another organization or person; and

     h.   Jeopardizing the security of the organization's electronic communications systems.

Exhibit 2.

21.    FreeState's Wireless Phone & Laptop Usage policy states:

Use of this equipment is primarily intended for business-related work. However, occasional, brief personal use is permitted within a reasonable limit.

Exhibit 3.

22. FreeState's Employee Manual has a Return of Property Policy which states:

Employees are responsible for items issued to them by FreeState Justice or in their possession or control, such as the following:

• Credit cards

• Donor lists

• Equipment

• Keys and key cards

• Computers

• Manuals

• Technology and equipment

• Correspondence

• Computer and paper files

Employees on or before their last day of work must return all FreeState Justice Property. Where permitted by applicable laws, FreeState Justice may withhold from the employee's check or final paycheck the cost of any items that are not returned when required. FreeState Justice may also take all action deemed appropriate to recover or protect its property.

Exhibit 4.

7

23.     On Friday, September 16, 2022 at 10:00 a.m., Lindsey Young, FreeState's Board President, and FreeState Board Member Lee Carpenter, Esq. met with LaMaster.

24.     Young and Carpenter notified LaMaster the Board had voted to terminate their employment effective September 30, 2022.  LaMaster was further notified that they were relieved of their Executive Director duties immediately, and during the final two weeks of their employment their role was to make themself available to ensure a smooth transition of organizational operations.  LaMaster was informed that Phillip Westry would serve as new Executive Director, and Tina Jones would serve as the new Deputy Executive Director.

25.     LaMaster stormed out of the meeting prior to its conclusion. LaMaster did not take with them the letter ("Letter") notifying them of their termination.  This Letter also contained an appendix of transition tasks for the remainder of their employment.  The Letter instructed LaMaster that they shall not:

> a.   Contact any current, former or prospective employee, contractor, vendor, board member, donor, partner or client of FreeState other than Phillip or Tina regarding FreeState matters, unless requested to do so by Phillip or Tina;

> b.   Disparage, defame, or denigrate FreeState or its employees, officials, consultants, advisors, or any other person associated with FreeState. Specifically, this applies to any discussion with any current, former or prospective donor, grantor, foundation, board member, board committee member, community partner, coalition partner (including its board members and staff), other key stakeholder of FreeState, government official, legislative staff member, member of the media, or through social media;

c.  Authorize any disbursements from FreeState's bank account other than normal employee payroll, which shall be approved by Phillip, Tina, or [Lindsey Young] prior to issuance;

d.  Sign any binding agreement on behalf of FreeState, including any contract, letter of intent or partnership agreement;

e.  Use any of FreeState's IT assets, including but not limited to Google Apps, Zoom, Slack, Salesforce, and Microsoft applications, except you may use IT assets as directed by Phillip, Tina and [Lindsey Young]; and

f.  Disrupt the operations of FreeState in any way.

Exhibit 5.

26.     Around 11:30 a.m./noon on September 16, 2022, FreeState disabled LaMaster's FreeState email account. FreeState did not, however, realize they had access to other "administrative" email accounts, such as the accounts that fielded generic inquiries from the public.

27.     At 1:04 p.m. on September 16, 2022, Young sent LaMaster a text message containing the termination letter referenced above. She further instructed LaMaster that as an employee of FreeState they were required to adhere to the requirements set forth in the letter. She did not receive a response.  Exhibit 6.

28.     LaMaster, however, did not adhere to the Letter's requirements.  LaMaster had begun to orchestrate a calculated attack on FreeState's IT infrastructure. LaMaster had begun to change passwords and access permissions to FreeState systems and accounts, which included accessing FreeState administrative email accounts to change permissions and access.

29.     On Friday, September 16, 2022 at 12:25 p.m., FreeState Staff Attorney and Pro Bono Coordinator Lauren Pruitt received an email from Google Workspace Alerts to FreeState's pro bono email account, probono@feestate-justice.org, stating that, "The primary admin for your organization was changed from info@freestate-justice.org to jlamaster@freestate-justice.org."

30.     LaMaster, without authorization, changed the administrative owner to FreeState's Google account to themself. Previously, Westry and Administrative Manager Chris Wertz[2] had also had administrative access to manage organizational contacts and vital work functions. Accordingly, only LaMaster could manage the platform, add or edits users and add or edit email addresses.

31.     At 12:33 p.m. on Friday, September 16, 2022, Pruitt emailed Westry from the probono@feestate-justice.org asking if they had seen the email referenced in Paragraph 29.  When Pruitt went to look for this email on Monday, September 19, 2022, it was in her trash folder.  Pruitt had not put the email in her trash folder.  Upon information and belief, LaMaster had accessed the probono@feestate-justice.org without authorization and deleted the email.

32.     Starting between approximately 1:00 p.m. and 2:00 p.m. on Friday, September 16, 2022, Westry no longer had access his FreeState email account, pwestry@freestate-justice.org.

33.     LaMaster, without authorization, disabled access to Westry's email account. LaMaster, without authorization, changed the password to Westry's email account to prohibit him from accessing it. Upon information and belief, LaMaster became aware of Pruitt's email to Westry referenced in Paragraph 31 above because LaMaster was monitoring Westry's email. Upon information and belief, LaMaster is still monitoring Westry's email, which contains grant information, donor information, and information subject to the attorney/client privilege.

---

[2] Wertz uses they/them pronouns.

34.     Starting between approximately 1:00 p.m. and 2:00 p.m. on Friday, September 16, 2022, Wertz no longer had access their FreeState email account, cwertz@freestate-justice.org.

35.     LaMaster, without authorization, disabled access to Wertz's email account. LaMaster, without authorization, changed the password to Wertz's email account to prohibit them from accessing it.

36.     By depriving them of access to their Google accounts, LaMaster has deprived Westry and Wertz of access to their emails, internal work calendars, and collaborative documents shared and worked on via Google Drive.

37.     As of the filing of this Complaint, Westry still does not have access to his email account.

38.     As of the filing of this Complaint, Wertz still does not have access to their email account.

39.     On Friday, September 16, 2022 at 2:11 p.m., Young sent LaMaster a text message stating that they were "actively damaging FreeState Justice by changing IT passwords" and ordering them to "stop immediately."  Exhibit 7. LaMaster did not stop.

40.     Okta is a single sign-on platform used by FreeState to manage and provide access to approximately 15-20 applications and accounts used by FreeState.  Okta stores passwords and username information for shared accounts.

41.     At approximately 5:00 p.m. on Friday, September 16, 2022, administrative access was removed for all Okta user accounts except for LaMaster's.  Previously Wertz, Errienna McKenzie, and Legacy Forte had administrative access. LaMaster removed Wertz's, McKenzie's, and Forte's administrative access.  Administrative access permits a user to create and remove users and manage the organization's shared usernames and passwords.

42.     LaMaster also changed the password to enter FreeState's Okta account.  This prevented FreeState's staff from being able to access Okta, which in turns prevents FreeState from accessing multiple different IT assets.  FreeState put in a repair ticket with Okta to attempt to have this corrected, however, LaMaster cancelled the ticket.

43.     At 5:01 p.m., Young sent LaMaster a text message containing a letter notifying them that their employment was terminated effective immediately.  The letter further instructed LaMaster to cease and desist all actions relating to FreeState, return control of all of FreeState's IT assets immediately and to return all FreeState property and records in their possession, including their FreeState computer.  Exhibit 8.

44.     LaMaster continued to interfere with FreeState's systems and accounts, depriving FreeState and its employees with its possessory interests in the same.

45.     By no later than 8:00 p.m. on Friday, September 16, 2022, LaMaster had, without authorization, changed FreeState's shared login to Airtable.  FreeState's full time staff previously had access to Airtable through a shared password and the email address billing@freestate-justice.org.  Because LaMaster changed the shared login to Airtable, only they have access to Airtable.  Airtable is a smart spreadsheet software and informational hub that keeps data in a centralized location.  Airtable contains all contact information for FreeState's staff, Board of Directors, partner organizations, community members, donors, clients, volunteers, press contacts, and pro bono attorneys.  Airtable also contains FreeState's legislative tracker for advocacy and policy work, organizational goals, office administration-related information such as supply and hardware inventories and software inventories, and is used to track and manage Pride events and other community engagement.  LaMaster now has unauthorized access to FreeState's confidential

and trade secret information, including, but not limited to, its employee lists, donor lists, volunteer lists, mailing lists, client lists, and pro bono attorney lists.

46.     By no later than 8:00 p.m. on Friday, September 16, 2022, LaMaster, without authorization, had removed administrative access to Vonage, the voice of internet protocol phone system for all FreeState phone lines, for all accounts except for their own. Previously, Wertz had administrative access to manage the Vonage.  FreeState personnel make and receive calls and texts for all phone lines, including individual staff lines, the general information line, and intake line, through Vonage.  By commandeering sole administrative access to Vonage, only LaMaster could manage the phone systems, add, edit, or remove lines, and change payment information.

47.     By no later than 8:00 p.m. on Friday, September 16, 2022, LaMaster had, without authorization, changed permissions and access to FreeState's Box account.  Box is the official Cloud-based repository of all FreeState documents, and contains policies, procedures, research materials, contracts, grants, correspondence, and financial information.  FreeState employees were granted access on a need to know basis by LaMaster.

48.     LaMaster removed Wertz's administrative access to Box, leaving themself as the only individual with administrative access.  LaMaster is currently the only one who has access to confidential files, such as financial reports. By commandeering sole administrative access to Box, only LaMaster can manage the file storage system, add and edit accounts and permissions, access all folders and files in the account, and change payment information.

49.     Pruitt noticed on Monday, September 19, 2022, that she was unable to access all of her folders on her Box account.  Her Box account contained a folder titled "Lauren," which contained template forms and pleadings to efficiently and effectively serve FreeState's clients, personal notes, and notes regarding cases, conversations with clients, trainings, conferences,

webinars and presentations, and other elements of her employment.  Only Pruitt and those with administrative access could access the folder.  Pruitt tried to access the folder, however, the folder was empty.  Pruitt did not attempt to access the folder on Friday, September 16, 2022, however, the file folder indicated that it had been modified on September 16, 2022 at 1:26 p.m. LaMaster, without authorization, either deleted the contents of the folder, or by commandeering access and administrative privileges of the system, changed permissions on the contents of the folder, depriving Pruitt of its use.

50.      By no later than 8:00 p.m. on Friday, September 16, 2022, LaMaster had changed the shared login to FreeState's Wordpress account.  As a result, only LaMaster had access to the account.  Previously, FreeState's Development Director, Shayne Miller-Westfield, and FreeState's Development & Communications Associate, Joel Medina, had access to the shared login to FreeState's Word Press account.  Wordpress is the platform behind FreeState's website, and is used to edit and designed webpages and information on the site. Accordingly, only LaMaster could update, edit, and post in FreeState's website.

51.      FreeState's website, https://freestate-justice.org/, belongs to FreeState and not LaMaster.

52.      FreeState's domain name, https://freestate-justice.org/, belongs to FreeState and not LaMaster.

53.      LaMaster never had lawful control of or ownership of FreeState's website or its domain name.

54.      On Saturday, September 17, 2022, undersigned counsel issued a cease and desist letter, which was emailed to LaMaster's personnel Gmail account. Exhibit 9.

55.     On Monday morning, September 19, 2022, FreeState employees had noticed that LaMaster, without authorization, accessed, tampered with and made changes to FreeState's Salesforce account.   All FreeState employees have access to FreeState's Salesforce account through an individual log in, which required use of a password.  Salesforce is FreeState's primary case management software and is used to track the progress of cases.  FreeState staff no longer had access to session times, which indicates all times they spoke to a client.  Session times set forth the individual who created the time, how the client was contacted, detail information regarding the interaction, as well as specific information about the client's case.  Session times are the most informative and detailed repository for information regarding a client's case.  These unauthorized changes rendered employees unable to access their session times.

56.     LaMaster also, without authorization, altered access and permissions within Salesforce such that FreeState employees could no longer see or access dashboard reports regarding cases.  For example, Salesforce is used to track all open cases not assigned to an attorney, and generates a dashboard report regarding the same.  Salesforce contains client, donor, and some pro bono attorney information for those assigned to cases. Due to LaMaster's tampering with FreeState's Salesforce account, this dashboard report has disappeared and is not accessible to FreeState employees.

57.     On Monday September 19, 2022 at approximately 4:56 p.m., LaMaster, utilized FreeState's Wordpress account and his FreeState laptop and without authorization and wrote a post on FreeState's website "Whistleblowing: Public Call for the Resignation of the FreeState Board of Directors."  Until the afternoon of September 21, FreeState's website was available to

anyone with internet access.  The post is attached hereto as Exhibit 10.[3]  It remained available on FreeState's website until the afternoon of September 21, 2022, at which time FreeState was able to suspend the website.  FreeState, however, cannot restore the website because LaMaster still has improper control of the domain.

58.     LaMaster, without authorization, accessed his FreeState laptop and FreeState's Constant Contact account in order to send their post to FreeState's entire email list.  LaMaster's post was sent to FreeState's email list on Monday September 19, 2022 at approximately 4:56 p.m.

59.     In this email, LaMaster incorrectly claimed that they are resigning, while they had already been fired.

60.     FreeState's email list contains approximately 43,000 accounts, including but not limited to, clients, donors, legislators, pro bono attorneys, and lobbyists located in Maryland and other states.  The email distribution list is contained in Constant Contact, controlled by user ids and passwords assigned by the Administrator. All current employees had their access removed to Constant Contact.

61.     LaMaster's post went to all accounts on FreeState's email list, and across state lines.

62.     LaMaster knows that FreeState's business reputation and dedication to its mission are vital as a social justice organization – indeed, FreeState relies on grantors, as well as donors, and pro bono attorneys who trust in FreeState's commitment to and dedication its mission. It is this financial and volunteer support that makes it possible for FreeState to continue to advocate for LGBTQ civil rights.

---

[3] As a result of LaMaster's unauthorized and defamatory post and ensuing media coverage, FreeState Board of Directors Vice President Riley Roshong has been and continues to be targeted, harassed, and threatened online.

63.     Accordingly, LaMaster knows that circulation of negative information about FreeState, especially statements attributing its actions to "the hallmarks of White Supremacist Culture," can materially harm, or even destroy, FreeState's operations.

64.     FreeState's Board's actions bear no resemblance to "White Supremacist Culture."

65.     By stating "white supremacist culture and practices are not what is in the best interest of the organization, our clients, our community, and of Maryland," LaMaster suggests that the Board engaged in white supremacist culture and practices.  This is false.

66.     LaMaster further stated that "our clients and community deserve a functioning, ethical and anti-racist board."  Their post falsely suggests that FreeState's current Board of Directors is not anti-racist.

67.     A Twitter user charm city art spice with the twitter handle @RahneAlexander tweeted a link to LaMaster's post, with a comment stating, "wouldn't you know it, i'm gonna have to talk to someone to stop my recurring donation."  Exhibit 11.  This individual has, in fact, stopped their recurring monthly donation.

68.     Because LaMaster had commandeered FreeState's Wordpress account, FreeState was not been able to remove the post from the FreeState website, until it suspended the website on the afternoon of September 21.

69.     LaMaster's improper conduct extends beyond the examples cited above. Without a full and complete review of LaMaster's electronic accounts and devices, it is impossible to determine the timing and extent of damages caused by their conduct.

70.     Upon information and belief, LaMaster's activities have been conducted from FreeState's laptop, which they have unlawfully retained.

71.     Upon information and belief, LaMaster drafted, posted, and disseminated the post titled, "Whistleblowing: Public Call for the Resignation of the FreeState Board of Directors" from FreeState's laptop which they have unlawfully retained.  LaMaster possessed and still possess the laptop without permission and authorization from FreeState.

72.     LaMaster continues to retain unfettered and unauthorized access to FreeState's systems and accounts.

73.     LaMaster is misappropriating this information to compete with FreeState.

74.     LaMaster has made overtures to FreeState employees and interns to join them in their next venture. Exhibit 12.  Specfically; LaMaster has requested that a FreeState intern join him in his new organization to carry forth the same activities on which she was working at FreeState. LaMaster has also reached out to a number of current employees seeking their support.

75.     As of the afternoon of September 21, the legal staff can no longer access the intake@freestate-justice.org email address. This email address is used for scheduling client intakes and receiving client documents.

76.     LaMaster has compromised and prevented access to several of FreeState's systems and accounts.

77.     LaMaster has unlawfully deprived and interfered with FreeState's possessory interests in its systems and accounts.

78.     LaMaster's unlawful actions have drastically impeded the ability for FreeState to continue its mission-critical work.

79.     As evidenced by their reference to "threats of legal action," in their post, LaMaster is aware that their actions are unlawful.  LaMaster's acts were willful and with knowledge of the harm that they would cause to FreeState and were performed with the intent to cause such harm.

80.     Without judicial intervention, LaMaster's actions will continue and cause FreeState the loss of its ability to perform its mission-critical work, its competitive advantages, valued donor and volunteer relationships, its employees, and its clients, which will result in irreparable harm.

## COUNT ONE
## Computer Fraud and Abuse Act
## 18 U.S.C. § 1030, *et seq.*

81.     FreeState repeats and incorporates by reference the allegations in all of the foregoing paragraphs of this Complaint as if set forth fully herein.

82.     The FreeState laptop is a protected computer under the Computer Fraud and Abuse Act because it is connected to the internet and used to communicate with individuals outside of Maryland and was thus used in interstate commerce or communication.

83.     FreeState's computer systems and internet-based systems and applications are connected to the Internet and used to communicate with individuals outside of Maryland, and they are thus involved in interstate commerce or communication and are protected computers.

84.     At 1:04 p.m. on September 16, 2022, LaMaster was instructed not to use any of FreeState's IT assets. At all subsequent times, any access of his FreeState computer and systems was without authorization.

85.     LaMaster knowingly and intentionally, and without authorization, used the FreeState laptop to change group sign ons, passwords, and access permissions to FreeState's systems and accounts, including but not limited to, FreeState's Salesforce, Box, Google Workspace, Vonage, Airtable, Wordpress, and Okta accounts.

86.     As a result of LaMaster's conduct, Westry and Wertz can no longer access their email and Google accounts.

87.     As a result of LaMaster's conduct, FreeState employees do not have full access to FreeState's Okta account or the data or information contained therein (for example, Airtable).

88.     As a result of LaMaster's conduct, FreeState employees do not have access to Airtable or any of the data or information contained therein.

89.     As a result of LaMaster's conduct, FreeState employees such as Pruitt do not have access to information and files within their Box account. FreeState employees lack access to the "info" account, which contains general organizational information.

90.     As a result of LaMaster's conduct, FreeState employees such as Pruitt do not have access to session times and dashboards on Salesforce.

91.     LaMaster was terminated from FreeState at 5:01 p.m. on September 16, 2022.  The termination letter instructed him to cease and desist all actions relating to FreeState, return control of all of FreeState's IT assets immediately and to return all FreeState property and records in their possession, including their FreeState computer.

92.     On September 19, 2022 at approximately 4:56 p.m., LaMaster knowingly and intentionally utilized his FreeState laptop and FreeState's Wordpress account without authorization and wrote a defamatory post on FreeState's website "Whistleblowing: Public Call for the Resignation of the FreeState Board of Directors."  FreeState's website was available to anyone with internet access until it was suspended.

93.     LaMaster, without authorization, knowingly and intentionally accessed his FreeState laptop and FreeState's Constant Contact account in order to send their post to FreeState's entire email list.  LaMaster's post was sent to FreeState's email list on Monday September 19, 2022 at approximately 4:56 p.m.

94.     LaMaster intentionally accessed a protected computer without authorization and as a result of his conduct, caused damage and loss.

95.     LaMaster intentionally caused damage to protected computers without authorization by intentionally and without authorization, rendering data, programs, systems, and information unavailable.

96.     LaMaster intentionally caused damage to protected computers without authorization by intentionally and without authorization, impairing the integrity of data, programs, systems, and information.

97.     Section (a)(5)(A) of the Computer Fraud and Abuse Act does not require a showing that the defendant exceeded authorized access.

98.     Because of this conduct, FreeState has suffered a loss of at least $5,000 consisting of lost donations resulting from LaMaster's damage, costs associated with responding to LaMaster's offenses, including attorney's fees associated with the cease and desist letter and pursuit of this Complaint, and the Motion for Temporary Restraining Order and Preliminary Injunction which appear to be the only way for FreeState to obtain full operational control of its systems and IT assets to resume operations, and the substantial business interruption and value of employee time to investigate and attempt to rectify LaMaster's unauthorized access and manipulation of systems in order to permit FreeState to continue to conduct its operations.

**COUNT TWO**
**Maryland Computer Crimes Act**

99. FreeState repeats and incorporates by reference the allegations in all of the foregoing paragraphs of this Complaint as if set forth fully herein.

100.     LaMaster did not have authorization to access FreeState's laptop, its computer network, computer services, computer programs, or computer databases.

101.    LaMaster knowingly and intentionally changed group sign ons, passwords, and access permissions to FreeState's systems and accounts, including but not limited to, FreeState's Salesforce, Box, Google Workspace, Vonage, Airtable, Wordpress and Okta accounts.

102.    As a result of LaMaster's conduct, Westry and Wertz can no longer access their email and Google accounts.

103.    As a result of LaMaster's conduct, FreeState employees do not have full access to FreeState's Okta account or the data or information contained therein (for example, Airtable).

104.    As a result of LaMaster's conduct, FreeState employees do not have access to Airtable or any of the data or information contained therein.

105.    As a result of LaMaster's conduct, FreeState employees such as Pruitt do not have access to information and files within their Box account.

106.    As a result of LaMaster's conduct, FreeState employees such as Pruitt do not have access to session times and dashboards on Salesforce.

107.    In doing so, LaMaster intended to alter, damage, or destroy data stored, maintained, or produced by a computer, computer network, computer software, computer system, computer service, or computer database.

108.    In doing so, LaMaster also intended to cause the malfunction or interruption of the operation of part of a computer, computer network, computer control language, computer software, computer system, computer service, or computer data.

109.    LaMaster did so intentionally and willfully.

110.    Because of this conduct, FreeState has been damaged.

**COUNT THREE**
**Misappropriation of Trade Secrets in**
**Violation of the Defend Trade Secrets Act of 2016**

111.    FreeState repeats and incorporates by reference the allegations in all of the foregoing paragraphs of this Complaint as if set forth fully herein.

112.    Under the Defend Trade Secrets Act, the term trade secret "means all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if

(A) the owner thereof has taken reasonable measures to keep such information secret; and

(B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information[.]".
18 U.S.C. § 1839(3).

113.    FreeState's donor lists, volunteer lists, email distribution lists, client lists, pro bono attorney list, and volunteer lists to which LaMaster was given access during their employment are carefully guarded by FreeState, derive independent economic value from not being generally known to, or being readily ascertainable through proper means by its competing organizations.

114.    FreeState took reasonable efforts to keep the information identified in Paragraph 112 secret, including:

- Storage of the information on Airtable and Salesforce;

- Limiting access through only password-protected systems;

- Limiting access to only FreeState's small staff, and interns and contractors with a need to have access;

- Maintaining a Confidentiality policy that prohibits the disclosure of such information;

- Maintaining an Internet Usage policy that prohibits the disclosure of such information; and

- Maintaining a Company Property policy that confirms that only occasional, brief personal use of FreeState wireless telephones and laptops are permitted.

115. LaMaster misappropriated FreeState's trade secrets without authorization and is using them to advance their interests to the detriment of FreeState.

116. LaMaster has publicly indicated they seeks to start a competing organization.

117. LaMaster's actions violate the Defend Trade Secrets Act of 2016, 19 U.S.C. § 1836.

118. Unless LaMaster is enjoined, FreeState will be irreparably damaged. FreeState is entitled to damages as a result of LaMaster's violations of the law, including its actual losses, losses measured by the unjust enrichment caused by the misappropriation, exemplary damages, injunctive relief and attorneys' fees.

**COUNT FOUR**
**Misappropriation and/or Violation of the**
**Maryland Uniform Trade Secrets Act**

119. FreeState repeats and incorporates by reference the allegations in all of the foregoing paragraphs of this Complaint as if set forth fully herein.

120. Under the Maryland Uniform Trade Secrets Act, the term "trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process that:

(1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

(2)  Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

MD. CODE ANN. COMM. LAW § 11-1201 (e).

121.    FreeState's donor lists, volunteer lists, email lists, client lists, pro bono attorney list, and volunteer lists to which LaMaster was given access during their employment are carefully guarded by FreeState, derive independent economic value from not being generally known to, or being readily ascertainable through proper means by its competitors.

122.    FreeState took reasonable efforts to protect the confidentiality of its trade secrets, including:

- Storage of the information on Airtable and Salesforce;

- Limiting access through only password-protected systems;

- Limiting access to only FreeState's small staff, and interns and contractors;

- Maintaining a Confidentiality policy that prohibits the disclosure of such information;

- Maintaining an Internet Usage policy that prohibits the disclosure of such information; and

- Maintaining a Company Property policy that confirms that only occasional, brief personal use of FreeState wireless telephones and laptops are permitted.

123.     LaMaster misappropriated FreeState's trade secrets without authorization and is using them to advance their interests to the detriment of FreeState.

124.    LaMaster's actions violate the Maryland Uniform Trade Secrets Act.

125.    Unless LaMaster is enjoined, FreeState will be irreparably damaged.  FreeState is entitled to damages as a result of LaMaster's violations of the law, including its actual losses,

losses measured by the unjust enrichment caused by the misappropriation, exemplary damages, injunctive relief and attorneys' fees.

## COUNT FIVE
### (Against All Defendants)
### Tortious Interference With Economic Relations

126.     FreeState repeats and incorporates by reference the allegations in all of the foregoing paragraphs of this Complaint as if set forth fully herein.

127.     By using FreeState's protected trade secrets and confidential information for their own benefit in violation of the Defend Trade Secrets Act of 2016 and the Maryland Uniform Trade Secrets Act, and by LaMaster breaching their fiduciary duty of loyalty, without justification or excuse, they have unlawfully and tortiously interfered with FreeState's business relations and prospective business relations with its clients, donors, grantors, volunteers, and employees.

128.     By accessing their FreeState email account and FreeState's Wordpress account without authorization, LaMaster uploaded an unauthorized post to FreeState's website.  LaMaster utilized FreeState's protected and confidential email list to disseminate the post to approximately 43,000 accounts.  LaMaster has tortiously interfered with FreeState's relationship with each individual, entity, or organization on its email list by using confidential, proprietary, and trade secret information to disseminate a post to induce them to diminish or terminate their relationships with FreeState.

129.     In addition, his post contained material mistruths about the end of his employment with FreeState, which is that they resigned (rather than was terminated).

130.     FreeState has suffered financial injury by Defendants' tortious interference with its business relations and prospective business relations with its clients, donors, grantors, volunteers, and employees.

131.     LaMaster has acted with intent to harm FreeState, or with conscious indifference to the consequences of their actions.

132.     FreeState has been damaged by LaMaster's actions in an amount to be determined at trial.

## COUNT SIX
### Breach of Fiduciary Duty of Loyalty

133.     FreeState repeats and incorporates by reference the allegations in all of the foregoing paragraphs of this Complaint as if set forth fully herein.

134.     While LaMaster was a FreeState employee, they owed the Company a duty to act solely for the benefit of FreeState in all matters within the scope of their employment.

135.     While LaMaster was a FreeState employee, they owed the Company a duty to use FreeState accounts and systems solely for the benefit of FreeState in all matters within the scope of their employment.

136.     LaMaster breached this duty by engaging in improper acts while still employed by FreeState which included, but were not limited to, using FreeState computer equipment, systems, and accounts to, without authorization, delete data and information, and deprive FreeStaff personnel of access to systems, accounts, documents, and files.

137.     LaMaster acted with intent to harm FreeState or with conscious indifference to the consequences of their actions.

138.     LaMaster's actions were wrongful and without privilege or lawful justification and have resulted in damage to FreeState, in an amount to be determined at trial.

139.     As a consequence of this misconduct, FreeState has been damaged in an amount to be determined at trial.

### COUNT SEVEN

**Conversion**

140.    FreeState repeats and incorporates by reference the allegations in all of the foregoing paragraphs of this Complaint as if set forth fully herein.

141.    By misappropriating, retaining, and exercising dominion and control over FreeState's property without authorization, including, but not limited to FreeState's laptop, system and account access information, emails, files, website domain, and confidential and trade secret information, including but not limited to client information, donor information, grant information, mailing lists, and pro bono attorney information, LaMaster has engaged in conversion.

142.    LaMaster's conduct interfered with the rightful use and possession by Plaintiff and its employees of its property, system and account access information, emails, files, website domain, and confidential and trade secret information, including but not limited to client information, donor information, grant information, mailing lists, and pro bono attorney information.

143.    LaMaster acted with intent to harm FreeState or with conscious indifference to the consequences of their actions.

144.    LaMaster's actions were wrongful and without privilege or lawful justification and have resulted in damage to FreeState, in an amount to be determined at trial.

145.    As a consequence of this conduct, FreeState has been damaged in an amount to be determined at trial.

**COUNT EIGHT**
**Defamation**

146.    FreeState repeats and incorporates by reference all of the foregoing the allegations as if set forth fully herein.

147.    LaMaster knowingly, maliciously, recklessly, or negligently published false statements about FreeState and its Board of Directors, including that they resigned (rather than they was terminated).

148.    LaMaster knowingly, maliciously, recklessly, or negligently published false statements about FreeState and its Board of Directors, including, *inter alia*, that FreeState's Board of Directors engaged in "the hallmarks of White Supremacist Culture," and engaged in "white supremacist culture and practices." LaMaster further knowingly, maliciously, recklessly, or negligently published a false statement about FreeState and its Board of Directors suggesting that it was not anti-racist.

149.    LaMaster's statements are false.

150.    The false statements were disseminated to FreeState's entire email list consisting of approximately 43,000 email addresses.

151.    The false statements were posted to FreeState's website.

152.    LaMaster made the defamatory statements with actual malice-*i.e.*, with knowledge of their falsity, or alternatively with a reckless disregard for their falsity.

153.    LaMaster's statements convey a defamatory meaning-that is, it lowered the reputation of FreeState in its profession, trade and/or business, which has a natural tendency to lessen grants, donations, volunteer and community engagement, and the support of legislators, advocates, and pro bono attorneys.

154.    As a result of the publication of false and defamatory statements, FreeState has suffered damages, in an amount to be determined at trial.

155.    In making the defamatory statements, LaMaster has acted intentionally, maliciously, willfully and with the intent to injure FreeState.

156.     As a result of LaMaster's false statements, FreeState has suffered and will continue to suffer lost donations, other consequential damage, and harm to reputation.

## PRAYER FOR RELIEF

FreeState has suffered and continues to suffer, immediate, irreparable, and substantial injury and damage to its business, goodwill and client, donor, and employee relations as the result of the conduct of LaMaster.  As a result, FreeState has no plain, adequate or complete remedy at law, and this action, with FreeState's request for temporary, preliminary, and permanent injunctive relief, is its only means of securing an adequate remedy.

WHEREFORE, FreeState respectfully further prays that this Court advance this case on the docket, order a speedy hearing at the earliest practicable date on the temporary, preliminary and permanent injunction sought by Plaintiff, cause this action to be expedited, and upon such hearing further order as follows:

A.     An injunction enjoining LaMaster from directly or indirectly, alone or in concert with others from use, access, and disclosure of confidential, proprietary, and trade secret information.

B.     An injunction enjoining LaMaster from communicating with FreeState donor or funding streams identified in the FreeState documents they misappropriated.

C.     An Order requiring that LaMaster immediately return to FreeState all originals and copies of FreeState property and documents that may be in his possession, including but not limited to the FreeState laptop and the contents therein, and to execute a certification that he has returned or deleted all such materials;

D.     An Order requiring LaMaster to preserve the contents of the FreeState laptop;

E.      An Order enjoining LaMaster from any unauthorized use and access to FreeState property, IT assets, systems or accounts;

F.      An Order requiring LaMaster to immediately provide all user names and passwords to all Free State systems or accounts.

G.      An Order requiring LaMaster to immediately restore all administrative access to FreeState's IT assets that they revoked from FreeState users without authorization;

H.      An Order requiring LaMaster to submit to a forensic evaluation of all storage locations and personal devices on which they stored, accessed, or downloaded any FreeState material.

I.       An Order requiring to LaMaster submit an accounting of all unauthorized changes they made to FreeState's accounts and systems, including:

        a.  Files they deleted or altered;

        b.  Reports they deleted or altered;

        c.  Emails they deleted; and

        d.  Records they downloaded, shared, or altered.

J.      Award FreeState compensatory and exemplary damages against Defendants in the amount to be determined;

K.      Award FreeState punitive damages against Defendants in the amount to be determined;

L.      Award FreeState's reasonable attorneys' fees; and

M.      Such other relief deemed appropriate by the Court.

Respectfully submitted,

/s/ *Lindsey A. White*
Lindsey A. White (Bar No. 29183)
Paul D. Burgin (Bar No. 20228)
SHAWE ROSENTHAL, LLP
One South St., Suite 1800
Baltimore, MD  21202
Telephone:  (410) 752-1040
Facsimile:  (410) 752-8861
law@shawe.com
pdb@shawe.com

September 21, 2022                          *Counsel for Plaintiff*

DocuSign Envelope ID: A515FAB1-D4EA-4484-9617-8CEC414F0BDC

## **VERIFICATION**

I HEREBY CERTIFY that I am an executive member of FreeState and am authorized to act on the Organization's behalf in filing this action.

I solemnly affirm under the penalties of perjury and upon personal knowledge that the contents of the foregoing Complaint for injunction, accounting, damages, attorneys' fees and other relief are true.

Executed this 21st day of September 2022.

DocuSigned by:

Tina Jones

D956B0F362B04B3...

Tina Jones
Deputy Executive Director
FreeState Justice, Inc.